UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOHN GIRTY,<br><br>        Plaintiff,<br><br>    v.<br><br>PARADIGM COLLECTION LLC,<br><br>        Defendant. | Case No. 4:23-cv-03239-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AMENDED MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 86 |

United States District Court
Northern District of California

On October 13, 2025, Plaintiff John Girty filed an amended motion for default judgment against remaining Defendant Paradigm Collection LLC. (Pl.'s Mot., Dkt. No. 86.)

The Court held a hearing on December 18, 2025, at which Defendant did not attend. Having considered Plaintiff's filings and the relevant legal authority, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment.[1]

## I.    BACKGROUND

Plaintiff John Girty was hired by Defendant Paradigm Collection LLC (dba PACE), as a consultant and independent contractor, to provide services as the Vice President of National Sales, under the terms of a consulting agreement. (Second Am. Compl., "SAC," Dkt. No. 29 ¶ 35; Consulting Agreement, SAC, Ex. A.)  On October 12, 2021, though Girty's job duties and responsibilities as a so-called "consultant" had not changed in any way, Girty was sent an offer of employment providing that he would be "employed as Vice President Sales, U.S.A" at PACE. (SAC ¶ 40; Offer Letter, SAC, Ex. B at 1.)  The Offer Letter provided that Girty would be paid an annual gross salary of $145,000 on a semi-monthly basis and benefits as "set forth in their entirety

---

[1] All parties have consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c), so the undersigned is permitted to enter judgment in this matter. (*See* Dkt. Nos. 8 & 12.)

in [PACE's] Employee Handbook, which [would] be forwarded to [him] upon acceptance of this offer." (SAC ¶ 41; Offer Letter at 1.)  Before being sent the Offer Letter, Plaintiff discussed the benefits he would receive as an employee with Monika and Bettina Elling, and he was told that he would receive health care benefits, including dental and vision, upon acceptance of the Offer Letter. (SAC ¶ 42.)  On October 13, 2021, Plaintiff signed the Offer Letter, which signified his acceptance, and, on October 18, 2021, he commenced his formal employment with PACE as Vice President of Sales, U.S.A. (SAC ¶ 43; *See* Offer Letter at 2.)

Plaintiff alleges that Defendants did not properly manage their payroll records, such that his pay was late, he received only partial payments, and, after December 16, 2022, Defendants failed to pay him any compensation at all, except for one payroll payment on February 6, 2023. (SAC ¶ 47.)  On April 13, 2023, Defendants informed Girty that he was being "furloughed," but the basis of the furlough was not given, and Defendants never provided Girty any further communication on the status of his employment. (SAC ¶ 59.)  Girty was immediately locked out of all the applications and systems used for his employment. *Id.*  Effectively, Girty's final day of employment was April 13, 2023. (SAC ¶ 60.)

Plaintiff claims that he has not been provided full compensation for the wages owed to him, including at least minimum wage, his second $500 bonus, his commissions earned and owed, compensation for five weeks and three days of accrued but unused vacation time, and his final paycheck. (SAC ¶ 61.)

On December 8, 2023, the Court granted Plaintiff leave to amend to allege alter ego liability and to distinguish between Monika and Bettina Elling's individual conduct, rather than "lumping" their conduct together. (12/8/23 Order, Dkt. No. 28 at 5-7.)  Plaintiff was advised that "if he cannot plausibly allege individual liability and/or allege alter ego liability, he should not include those allegations in the amended complaint." *Id.* at 8.

On December 22, 2023, Plaintiff filed a second amended complaint alleging twelve causes of action.  On May 3, 2024, the Court granted the motion to dismiss in part and dismissed the Ellings with prejudice, such that Paradigm was the only remaining defendant. (5/3/24 Order, Dkt. No. 47.)  On May 28, 2024, Defendant filed an answer. (Dkt. No. 48.) At the time, Defendant was

represented by Attorney Jon H. Freis. *Id.*

On July 29, 2024, Attorney Freis filed a motion to withdraw as counsel for Defendant. (Dkt. No. 56.)  On August 12, 2024, Plaintiff opposed the withdrawal. (Dkt. No. 59.)  On September 5, 2024, the Court granted Mr. Freis's motion to withdraw as counsel over Plaintiff's objection, and Defendant was given until November 4, 2024, to obtain new counsel and have counsel file a notice of appearance. (Dkt. No. 62 at 4.)  No notice of appearance was timely filed. (*See* Dkt. No. 66 at 1.)

On November 5, 2024, Plaintiff moved for entry of default. (Dkt. No. 64.)  On November 7, 2024, the Court denied the motion for entry of default on the grounds that Plaintiff had not properly moved to strike the answer prior to seeking entry of default. (Dkt. No. 66.)[2]

On March 17, 2025, Plaintiff filed a motion to strike Defendant's answer because Defendant is an unrepresented corporation, and corporations cannot defend themselves in federal court without counsel. (Dkt. No. 69 at 2.)  On May 21, 2025, the Court granted the motion to strike the answer and directed the Clerk of the Court to enter default as to Defendant. (Dkt. No. 76 at 2.)  On May 23, 2025, the Clerk of the Court entered default against Defendant.  (Dkt. No. 77.)

On July 22, 2025, Plaintiff filed a motion for default judgment. (Dkt. No. 78.)  On September 15, 2025, the Court denied the motion for default judgment without prejudice on the grounds that Plaintiff failed to clearly identify for which of the 12 causes of action he was seeking default judgment, and that he was seeking a significant amount of emotional distress damages despite not clearly alleging emotional distress damages in the operative complaint. (9/15/25 Order, Dkt. No. 85 at 1-2.)  The Court also noted that there were issues with counsel's billing records, which appeared to seek recovery for administrative tasks that are not compensable. *Id*. at 2.

On October 13, 2025, Plaintiff filed the instant, amended motion for default judgment. (Pl.'s Mot., Dkt. No. 86.)  The Court held a hearing on December 18, 2025, and ordered Plaintiff to submit a supplemental brief and supporting declaration in support of his motion for default judgment. (12/18/15 Minute Entry, Dkt. No. 93.)  On January 7, 2026, Plaintiff filed a

---

[2] The Clerk of Court erroneously entered default despite this deficiency, which was later vacated by the Court. (*See* Dkt. No. 68.)

supplemental brief and a supporting declaration as ordered. (Pl.'s Suppl. Brief, Dkt. No. 94; Suppl. Decl. of Mani Sheik, "Suppl. Sheik Decl.," Dkt. No. 94-1.)

To date, Defendant has not filed an opposition to Plaintiff's motion for default judgment nor has it appeared in this matter.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).  In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## III.    DISCUSSION

### A.    Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case.  *In re Tuli*, 172 F.3d

United States District Court
Northern District of California

4

707, 712 (9th Cir. 1999).

### i.   Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this complaint pursuant to 28 U.S.C. § 1332, as there is complete diversity among the parties.  Specifically, Plaintiff resided in California. (SAC ¶ 4.)  In turn, Defendant is an LLC organized in and with its principal place of business in Delaware. (SAC ¶ 5.)  The amount in controversy is also over $75,000.  (SAC ¶ 1.)

### ii.   Personal Jurisdiction and Venue

The Court finds that personal jurisdiction is satisfied.  Here, Defendant initially answered the operative complaint (which was later stricken) and even conducted discovery in this case, and, therefore, consented to personal jurisdiction. Additionally, Plaintiff resides in this district, so venue is proper.

### iii.   Service of Process

There is no dispute that Defendant was properly served with the complaint, as it filed an answer.  (*See* Dkt. No. 48.)  After Defendant's counsel withdrew and Defendant failed to obtain new counsel, Defendant's answer was stricken, and default was entered.  (*See* Dkt. Nos. 76 & 77.)

### B.   Application to the Case at Bar

Since the Court has jurisdiction in this matter, this Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate in this matter.

### i.   Prejudice to Plaintiff

The Court finds that Plaintiff will suffer prejudice if default judgment is not entered.  If default judgment is not entered, Plaintiff will have no recourse to obtain the unpaid under his employment agreement with Defendant.  *See Fudy Printing Co. v. Aliphcom, Inc.*, Case No. 17-cv-3863-JSC, 2019 U.S. Dist. LEXIS 86791, at *7 (N.D. Cal. Mar. 7, 2019).

### ii.   Merits of Plaintiff's Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiff's substantive claim and the sufficiency of the Complaint.  *Eitel*, 782 F.2d at 1471–72.  A party seeking default judgment must state a valid claim upon which it may recover. *Walters v. Statewide Concrete Barrier, Inc.*,

2005 U.S. Dist. LEXIS 49433, at *8 (N.D. Cal. Sept. 2, 2005).

a. Breaches Of Written And Oral Contracts and of Implied Covenant of Good Faith and Fair Dealing (COA 1-2)

The first two claims are for breach of contract and for breach of the implied covenant of good faith and fair dealing. (SAC ¶¶ 62-100.) The essential elements of a breach of contract claim under California law are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968); *U.S. ex rel. Rabuka v. RMA Land Const., Inc.*, 2014 WL 4384544, at *2 (C.D. Cal. 2014). To state a claim for breach of implied covenant of good faith and fair dealing, a plaintiff must allege: (1) that the plaintiff and defendant entered into a contract; (2) that the plaintiff did all, or substantially all of the significant things that the contract required them to do or that they were excused from having to do those things; (3) that the defendant's conduct prevented the plaintiff from receiving the benefits due under the contract; (4) that by doing so, the defendant did not act fairly and in good faith; and (5) that the plaintiff was harmed by the defendant's conduct. CACI No. 325 (Breach of Implied Covenant of Good Faith and Fair Dealing – Essential Elements), *Judicial Council of California Civil Jury Instructions* (2025).

Here, the operative complaint alleges that Plaintiff and Defendant entered into both written and oral agreements in which Defendant promised to: (1) provide health benefits for Plaintiff and his family, including dental and vision; (2) pay Plaintiff $6,041.67 per pay period, less taxes, deductions, and withholdings; (3) provide Plaintiff three weeks of paid vacation time during each 12-month period; and (4) pay a $500 bonus. (SAC ¶¶ 62-70.) Plaintiff alleges that he performed all, or substantially all, of the obligations of his employment with Defendant, except those that were excused from performance, but he did not receive his promised compensation or benefits. (SAC ¶ 77.) As a result, Defendant breached the agreements. (SAC ¶¶ 71-79.)

Thus, the operative complaint adequately states a claim for breach of contract and for breach of the implied covenant of good faith and fair dealing.

United States District Court
Northern District of California

b.   Promissory Estoppel and Promissory Fraud (COA 3-4)

Plaintiff's third and fourth causes of action are for promissory estoppel and promissory fraud. (SAC ¶¶ 101-157.) "'Promissory fraud' is a subspecies of the action or fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638 (1996). "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract . . . [i]n such cases, the plaintiff's claim does not depend upon whether the defendant's promise is ultimately enforceable as a contract." *Id.* Fraud requires (a) misrepresentation; (b) knowledge of falsity (i.e., scienter); (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Intrieri v. Sup. Ct.*, 117 Cal.App.4th 72, 85 (2004).

Similarly, promissory estoppel requires: (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed. *Moncada v. W. Coast Quartz Corp.*, 221 Cal.App.4th 768, 779 (2013).

Here, the operative complaint alleges that Defendant hired Plaintiff and knowingly, intentionally, and fraudulently promised to pay him compensation and benefits without securing the necessary capitalization or even being legally formed to operate a business. (SAC ¶¶ 106, 135) Defendant also knowingly, intentionally, and fraudulently promised to: (1) provide health benefits for Plaintiff and his family, including dental and vision; (2) pay Plaintiff $6,041.67 per pay period, less taxes, deductions, and withholdings; (3) provide Plaintiff three weeks of paid vacation time during each 12-month period; and (4) pay a $500 bonus. (SAC ¶¶ 104-105, 107-119, 133-134, 136-148.)  Moreover, Defendant intended to induce Plaintiff's reliance on these promises, which he reasonably did. (SAC ¶¶ 120-121, 149-150.) By making these false promises knowingly and intentionally, Defendant caused Plaintiff harm. (SAC ¶¶ 122-27, 151-157)

Thus, the operative complaint adequately states claims for promissory estoppel and promissory fraud.

c.   Quantum Meruit And Unjust Enrichment (COA 5-6)

The fifth and sixth causes of action are for quantum meruit and unjust enrichment. (SAC

7

¶¶ 158-175.)  The essential elements of recovery under quantum meruit are: (1) valuable services rendered for the person sought to be charged; (2) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (3) under such circumstances as would reasonably inform the person sought to be charged that plaintiff, in performing such services, was expecting to be paid by the person sought to be charged. *Fontaine v. Home Box Off., Inc.*, 654 F. Supp. 298, 303 (C.D. Cal. 1986).

Further, to recover on an unjust enrichment claim as an independent cause of action, a plaintiff must show that "the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (citing *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000)).

Here, the SAC meets the standards for both claims, because Plaintiff provided substantial services, labor, and experience to Defendant, but he was not paid for these services for seven pay periods. (SAC ¶¶ 158-166, 167-175.)  Defendant was, therefore, unjustly enriched by the services it received for free and for which it never paid. (SAC ¶¶ 167-175.)  Plaintiff expected to be paid compensation for those services rendered, which were at a fixed and known amount ($6,041.67 per pay period, for a total of $42,291.69). (*See* SAC ¶ 160.)

### d. Failure To Pay All Accrued Vacation Time (COA 7)

Plaintiff's seventh cause of action is for failure to pay all accrued vacation time in violation of California Labor Code § 227.3. (SAC ¶¶ 176-182.)  Section 227.3 provides that "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served…." *See Iljas v. Ripley Entertainment Inc.*, 403 F.Supp.3d 793, 800 (2019).

Under California law, vacation pay "is, in effect, additional wages for services performed." *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 779 (1982). When an employer contracts to provide vacation pay, it "constitutes deferred wages for services rendered" that "vests as the labor is rendered." *Id.* at 784; *see also*, *Owen v. Macy's, Inc.*, 175 Cal. App. 4th

8

462 (2009) ("vacation pay vests as it is earned"). "This means that a terminated employee must 'be paid in wages for a pro rata share of his vacation pay'" upon termination of employment. *Iljas*, 403 F. Supp. 3d at 800.

Here, Defendant agreed to provide Plaintiff with three weeks of vacation every twelve months. (SAC ¶¶ 178-179.) At the time his employment ended, Plaintiff had accrued five weeks and three days of unused vacation time. (SAC ¶ 180.) Defendant never paid Plaintiff for this accrued but unused vacation time. (SAC ¶ 181.)

Accordingly, Plaintiff has sufficiently stated a claim for violation of Section 227.3.

e. Failure To Pay Minimum Wage (COA 8)

Plaintiff's eighth cause of action is for failure to pay minimum wage in violation of California Labor Code § 1194. (SAC ¶¶ 183-193.) Section 1194 requires an employer to pay at least the legal minimum wage. Here, Defendant did not do so from December 16, 2022, until the end of Plaintiff's employment on April 13, 2023, except for one payroll payment on February 6, 2023. (SAC ¶¶ 189-193) Thus, by not paying Plaintiff for the vast majority of the hours worked, Defendant violated the minimum wage law.

f. Failure To Pay All Compensation Due and Owing at the Time of Separation of Employment (COA 9)

Plaintiff's ninth cause of action is for failure to pay all compensation due at time of separation. (SAC ¶¶ 194-206.) California Labor Code § 201 requires an employer who discharges an employee to pay all compensation due and owing immediately upon discharge, which includes accrued but unused vacation pay and promised bonuses.

Here, Defendant did not pay Plaintiff all wages owed at the time of his termination of employment, which included wages from December 16, 2022 until the end of Plaintiff's employment on April 13, 2023 (except for one payroll payment on February 6, 2023), accrued but unused vacation pay, and a promised $500 bonus. (SAC ¶¶ 198-206.) Thus, Defendant violated Labor Code § 201 as to all three types of unpaid wages.

g. Waiting Time Penalties (COA 10)

Plaintiff's tenth cause of action is for waiting time penalties for nonpayment of wages in

violation of California Labor Code § 203. (SAC ¶¶ 207-218.) Section 203 provides for a penalty of up to 30 days' wages if an employer willfully violates section 201.

Here, as explained immediately above, Defendant violated Labor Code section 201 by failing to pay Plaintiff all wages owed at the termination of employment. As such, Defendant is also liable for waiting time penalties.

h.   Failure To Provide Wage Statements (COA 11)

Plaintiff's eleventh cause of action is for failure to provide wage statements in violation of California Labor Code § 226. (SAC ¶¶ 219-229.) Section 226 requires an employer "semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages or separate if wages are paid by personal check or cash, an accurate itemized statement in writing." Subsections 226(e) and (h) establish an employee's right to recover penalties for violation of the statute, together with costs of suit and attorneys' fees. The maximum penalty is $4,000. *Id.*

Here, Plaintiff was not provided any wage statements since late 2021. (SAC ¶ 227.) Thus, Plaintiff has sufficiently stated a claim for violation of California Labor Code § 226.

i.   Unfair Competition (COA 12)

Plaintiff's twelfth cause of action is for violation of California Business & Professions Code § 17200. (SAC ¶¶ 230-245.)  Section 17200 claims prohibit acts of unfair competition, which "shall mean and include any unlawful, unfair or fraudulent business act or practice." The statute "borrows violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200." *Farmers Ins. Exch. v. Sup. Ct.*, 2 Cal.4th 377, 383 (1992) (quotation omitted). "Violation of almost any federal, state, or local law may serve as the basis for a[n] [unfair competition] claim." *Plascencia v. Lending 1st Mortg.*, 583 F.Supp.2d 1090, 1098 (N.D. Cal.2008) (citing *Saunders v. Sup. Ct.*, 27 Cal.App.4th 832, 838-39 (1994)). Thus, for example, when the court denies a motion to dismiss a promissory estoppel claim, that denial serves as a predicate to also deny the companion unfair competition claim. *Park v. U.S. Bank Nat. Ass'n*, 2011 WL 4102211, *15 (S.D. Cal. 2011).

Here, the SAC alleges that Defendant engaged in numerous acts of unfair competition.

United States District Court
Northern District of California

10

(SAC ¶¶ 230-245.) In essence, this cause of action establishes that each of the above violations of law (e.g., promissory fraud, promissory estoppel, various Labor Code violations like failure to pay wages) is itself an act of unfair competition intended to benefit Defendant and give it an unfair leg up in competition with others so as to lead to a violation of section 172000 as well. Thus, for example, the claim that Defendant committed promissory fraud by hiring Plaintiff and knowingly, intentionally, and fraudulently promising to pay him compensation and benefits without securing the necessary capitalization or even being legally formed to operate a business [*id.* at ¶ 238] serves as the predicate for the unfair competition claim. *Park*, 2011 WL 4102211 at *15 (promissory estoppel claim can serve as predicate for companion unfair competition claim).  Accordingly, Plaintiff sufficiently stated an unfair competition claim.

### iii.    Sum of Money at Stake

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered. In making this assessment, the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel*,  782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by Defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. Dec. 15, 1997).  A default judgment is only disfavored when a large amount of money is involved or is unreasonable in light of Defendant's actions. *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).  In determining if the amount at stake is reasonable, the Court may consider a plaintiff's declarations, calculations, and other documentation of damages.  *Id*.

Here, Plaintiff seeks $101,606.73 in actual damages, $20,730.40 in statutory damages, $145,000 in emotional distress damages, $102,600.50 in attorneys' fees, $405.27 in costs, and $28,726.64 in interest.  (Pl.'s Mot. at 15.)  After accounting for the adjustments discussed below, the Court concludes that the amount is reasonable because it is based on the contractual terms at issue, which Defendant agreed to and under which Defendant is now liable.  Accordingly, this factor weighs in favor of default judgment.

### iv.    The Possibility of a Dispute Concerning Material Facts

United States District Court
Northern District of California

The fifth *Eitel* factor considers the possibility of dispute as to any material facts of the case. Plaintiff's employment offer letter was executed by Defendant's CEO Monika Elling and accepted by Plaintiff, and it was attached to the second amended complaint. (10/13/21 Employment Contract, SAC, Ex. B.) Further, although Defendant originally participated in the action, it made no serious attempt to contest Plaintiff's factual allegation that there was a breach of contract. Rather, Defendant's representatives ultimately stopped paying invoices and communicating with their own counsel, resulting in the withdrawal of counsel, the striking of Defendant's answer, and the entry of default. (Dkt. No. 62 at 1-2.) Under such circumstances, the possibility of Defendant raising a dispute regarding their liability for damages is unlikely.

Thus, this factor weighs in favor of default judgment.

### v.    Whether Default was a Result of Excusable Neglect

The sixth *Eitel* factor contemplates the possibility that Defendant's default was the result of excusable neglect. Under this analysis, the Court considers whether Defendant was put on adequate notice to apprise it of the pendency of the action brought against it. *Phillip Morris USA, Inc. v. Castworld Prod., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003). In addition, the Court also considers whether the circumstances surrounding Defendant's failure to answer the complaint are sufficient to excuse or justify its default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default cannot be attributed to excusable neglect where defendants were properly served with the complaint, the notice of entry of default, and the papers in support thereof).

Here, Defendant was not only served with the operative complaint, but it obtained counsel to file respond and participate in this litigation. Thus, there can be no dispute that Defendant was aware of the litigation, and that Defendant's failure to oppose the instant motion is not based on excusable neglect.

### vi.    Federal Rules Preference for a Decision on the Merits

After an examination of these facts in the aggregate, this Court finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits. The Court therefore recommends that default judgment be granted.

12

## IV.    DAMAGES

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

### A.    Actual Damages Arising out of Defendant's Misconduct

Plaintiff requests $101,606.73 in actual damages. (Pl.'s Mot. at 12.)  This amount is the sum of: (a) $42,291.69 for the seven pay periods in which Plaintiff received no compensation at all, at $6,041.67 per pay period; (b) $43,200.00 for the eighteen months he had to pay for healthcare insurance out of pocket, at $2,400 per month; (c) $15,615.04 for 28 days of accrued but unused vacation time, at $557.68 per day; and (d) $500.00 for the second bonus that was promised but not paid. (Decl. of John Girty, Dkt. No. 78-2 ¶ 11; Decl. of Mani Sheik, "Sheik Decl.," Dkt. No. 86-1 ¶ 2.)  These damages are liquidated and readily ascertainable.

The Court finds that Plaintiff is entitled to this entire amount.

### B.    Statutory Damages

Plaintiff seeks statutory damages in the amount of $20,730.40. (Pl.'s Mot. at 12.)  Labor Code section 203 provides for waiting time penalties of up to 30 days for failure to pay all due and owing at the termination of employment. Cal. Labor Code § 203(a). The maximum waiting time penalties is 30 days of wages. *Id.*  Plaintiff's daily rate is calculated at $557.69 per day, such that 30 days of wages is $16,730.40 (Sheik Decl. ¶¶ 2-3.) The Court agrees that this penalty amount is due and owing.

Additionally, California Labor Code § 226 provides for penalties up to $4,000 for failure to provide correct wage statements. Cal. Labor Code § 226(e)(1). The penalty is $50 for the first wage statement and $100 for each subsequent pay period. *Id.*  Plaintiff seeks the maximum penalty of $4,000. (Pl.'s Mot. at 12.)  In the supplemental brief, however, Plaintiff now seeks $3,500 in penalties based on 36 missed pay periods. (Pl.'s Suppl. Br. at 2; Suppl. Sheik Decl. ¶ 4.) The Court

finds that amount reasonable.

In light of the foregoing, the Court awards $20,230.40 in statutory damages.

### C.     Emotional Distress Damages

Next, Plaintiff seeks an award of $145,000 in emotional distress damages, which is equivalent to one year's pay. (Pl.'s Mot. at 13.)  In denying the first motion for default judgment, the Court advised Plaintiff that the emotional distress damages "do not appear to be clearly alleged in the operative complaint…." (Dkt. No. 85 at 2.)  In the supplemental brief, Plaintiff concedes that he did not allege emotional distress damages, and, therefore, he cannot recover them on a motion for default judgment. (Pl.'s Suppl. Br. at 1-2.)

Accordingly, the Court declines to award emotional distress damages on default judgment.

### D.     Attorney's Fees and Costs

#### i.     Attorneys' Fees

##### j.   Reasonable Hourly Rate

Plaintiff seeks $102,600.50 in attorney's fees and $405.27 in costs.  (Pl.'s Mot. at 14-15.) To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750.  In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir.2008). Generally, the relevant community is the forum where the district court sits. *Id.*  "The applicant bears the burden to produce sufficient evidence that the rates claimed for its attorneys are in line with prevailing market rates." *W.G. Barr Mgmt., LLC v. ContekPro LLC*, No. 23-CV-02257-TSH, 2024 WL 3850820, at *5 (N.D. Cal. Aug. 15, 2024), *aff'd,* No. 24-5321, 2025 WL 3295117 (9th Cir. Nov. 26, 2025) (citing *Fischer v. SJB-PD, Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000)).

Here, Plaintiff seeks hourly rates of $895 for Attorney Mani Sheik and $490 for Attorney Kimya Liaghat.  (Sheik Decl. ¶ 9.)   Plaintiff explains that these are the rates they have been awarded in noncontingent, employment matters.  Attorney Sheik and has 19 years of experience, while Attorney Liaghat has six years of experience. (Sheik Decl. ¶¶ 4, 9.)

14

United States District Court
Northern District of California

The Court finds that Plaintiff has not met his evidentiary burden to show that the rates claimed are in line with prevailing market rates, because he has not provided any evidence beyond a declaration stating that those are the rates charged in noncontingent matters. Indeed, courts in this district have awarded lower rates for counsel with similar experience in breach of employment contract cases. *See, e.g., Prakash Jones v. Morris + D'Angelo*, No. 5:23-CV-05830-BLF, 2024 WL 4428980, at *11 (N.D. Cal. Oct. 4, 2024) ($650 per hour for partner with 22 years of experience and associate rate of $450 per hour were found reasonable). Thus, the Court finds that Mr. Sheik's reasonable hourly rate is $650 per hour and Ms. Liaghat's reasonable hourly rate is $450.

### k.   Reasonableness of Hours Billed

Next, the Court considers the reasonableness of the hours billed. To assess whether the number of hours billed is reasonable, Plaintiff must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986). The party seeking fees bears the burden to prove the reasonableness of hours expended using detailed time records documenting completed tasks and time expended. *Hensley*, 461 U.S. at 437.

After reviewing counsel's declaration and the billing records detailing the tasks completed and time spent in this matter, the Court has significant concerns regarding overbilling. The Court already brought some of these concerns to counsel's attention when it denied the first motion for default judgment and noted that some of the tasks billed were administrative and not compensable, but counsel declined to amend his billing records. Other entries are for time spent on unmeritorious arguments that unnecessarily duplicated the proceedings, such as pursuing an alter ego theory of liability despite an inability to allege information explicitly identified by the Court as being necessary to warrant amendment, for filing motions that were procedurally deficient or for pursuing frivolous arguments. For example, Plaintiff unreasonably opposed Attorney Freis's motion to withdraw as counsel. Another example is when Plaintiff moved for entry of default before moving to strike the answer. Accordingly, the Court includes a chart of the reductions:

| Mani Sheik | | |
|---|---|---|
| Date | Description | Hours |

United States District Court
Northern District of California

| Date | Description | Hours |
|---|---|---|
| 12/14/2023 | Review alter ego case law and elements to prove alter ego liability in preparation of call with client and additional motion practice and amending complaint. | 2.3 |
| 12/19/2023 | Revise draft second amended complaint to add alter ego facts, and further legal research regarding alter ego allegations. | 3.0 |
| 12/20/2023 | Continue to research alter ego cases and draft second amended complaint to include facts with same. | 2.7 |
| 12/21/2023 | Prepare for and attend meet and confer cal with opposing counsel and K. Liaghat regarding discovery issues, and follow-up strategy calls regarding next steps stemming from call (1.4); **continue to draft second amended complaint (2.5).** | 2.5 |
| 12/22/2023 | Finalize second amended complaint for filing. | 0.7 |
| 1/22/2024 | Revise draft of opposition to motion to dismiss SAC and research and analysis for same. | 3.0 |
| 1/23/2024 | Continue to revise draft of opposition to SAC and research additional case law. | 5.3 |
| 1/24/2024 | Revise and finalize for filing opposition to SAC. | 0.6 |
| 11/5/2024 | Draft and conduct research for motion for default, proposed entry, and declaration for same. | 2.5 |
| | **Total Reduction for Mr. Sheik:** | **22.6** |

| Kimya Liaghat | | |
|---|---|---|
| Date | Description | Hours |
| 6/29/2023 | Finalize and file complaint and initiating documents in Northern District. | 0.9 |
| 7/14/2023 | Draft consent to magistrate judge and certificate of interested parties, communications about same, and **file documents.** | [0.2][3] |
| 9/11/2023 | Call with J. Girty to discuss additional facts for amending complaint, and revise and finalize amended complaint and **file.** | [0.2] |
| 9/26/2023 | Review edits to CMC statement provided by J. Freis. Finalize CMC statement and **file.** | [0.2] |
| 10/6/2023 | Discuss opposition to motion to dismiss with M. Sheik. Create table of authorities and content and **file opposition.** | [0.2] |
| 12/18/2023 | Attend call with third party witnesses and follow up call with M. Sheik regarding facts for alter ego allegations. | 2.1 |
| 12/19/2023 | Draft second amended complaint. | 0.7 |
| 1/22/2024 | Draft opposition to motion to dismiss second amended complaint. Research case law on same. | 1.7 |
| 1/24/2024 | Revise draft opposition to motion to dismiss and create table of authorities and contents, finalize, and file. | 0.6 |
| 3/14/2024 | Draft and **file** stipulation to continue motion to dismiss hearing until April 4 and follow up with J. Freis. | [0.2] |
| 8/9/2024 | Review J. Fries motion for withdrawal. Research case law and begin drafting opposition. Strategize about same. | 1.6 |
| 9/5/2024 | Review motion for withdrawal and response in preparation of hearing. Attend motion for withdrawal hearing. | 0.4 |

---

[3] The Court will deduct 0.2 hours for each entry that includes filing a document, which is an administrative task that is not compensable. *See Rodgers v. Claim Jumper Restaurant, LLC*, Case No. 13-cv-5496 YGR, 2015 WL 1886708, at *9 (N.D. Cal. Apr. 24, 2015) (eliminating time entries for clerical work, including e-filing, because clerical or secretarial tasks "are generally not recoverable in a motion for attorney's fees and should instead be considered a part of normal overhead costs").

16

| | Draft application for entry of default and supporting papers, and research for same. | |
|---|---|---|
| 11/5/2024 | | 1.8 |
| | **Total Reduction for Ms. Liaghat** | **10.8** |

After the reductions, the Court finds that Mr. Sheik reasonably billed 59.9 hours, and Ms. Liaghat reasonably billed 47.9 hours. Thus, the reasonable attorneys' fees incurred by Mr. Sheik and Ms. Liaghat is $38,935 and $21,555 respectively, which total $60,490.

### ii.   Costs

Plaintiff seeks $405.27 in costs, which are comprised of the filing fee, for service by U.S. Mail. (Sheik Decl. ¶ 12.) Such costs are recoverable. *See Pension Plan for Pension Tr. Fund for Operating Eng'rs v. J&K Sweeping*, No. 14-cv-01179-JCS, 2014 U.S. Dist. LEXIS 129691, at *22 (N.D. Cal. Aug. 22, 2014) ("With respect to Plaintiffs' request for costs for messenger service, legal research, and investigation, such costs are available on the basis that they are generally billed as attorney's fees."). Thus, Plaintiff is entitled to $405.27 in costs.

### iii.   Apportionment of Fees and Costs

Unfortunately, in seeking an award of attorneys' fees and costs, Plaintiff failed to initially apportion his attorneys' fees and costs between his California Labor Code violations and the breach of contract claim, as to which fees are not recoverable. *See Jones*, 2024 WL 4428980, at *11. In his supplemental brief, Plaintiff argues that the work performed was so intertwined as to entitle him to the entire award of attorneys' fees and costs. (Pl.'s Suppl. Brief at 3.)

The Court disagrees. As was the case in *Jones,* the contract claim is primary, and the Labor Code violations flowed from the failure to pay pursuant to the employment. *See* 2024 WL 4428980, at *11. Also similar to *Jones,* the Labor Code violations are easy to prove, because they involve waiting time penalties for failure to pay all wages due at termination, and for the failure to provide accurate wage statements, as well as failure to pay out accrued vacation time. Indeed, the central allegation is that Defendant stopped paying Plaintiff for the work performed pursuant to the offer letter.

The Court finds that an award of 40% of the $60,895.27 in attorneys' fees and costs incurred is appropriate given the overlap between the contract and Labor Code violations. Thus, the Court awards Plaintiff $24,358.11.

**E.    Interest**

Finally, Plaintiff seeks $33.38 in interest per day since the date of filing. (Pl.'s Mot. at 15 (citing Sheik Decl. ¶ 13); Pl.'s Suppl. Br. at 1.) Plaintiff did not provide a legal basis for an award of interest in his moving papers. In the supplemental briefing, however, Plaintiff explained that California Civil Code § 3287(a) calculates interest at 10% per annum for breach of contract. (Pl.'s Suppl. Br. at 1.)

Thus, the Court finds that Plaintiff is entitled to interest on this amount at the rate of 10% per annum, which equals $33.38 per day, since the case was filed on June 9, 2023. (*See* Sheik Decl. ¶ 13.)

## V.    CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment.  Judgment is entered against Defendant Paradigm Collection LLC for the following amounts:

(1) $121,837.13 in actual and statutory damages;

(2) Interest on that amount from June 9, 2023, the date of filing, at a rate of 10% per annum;

(3) Apportioned attorney's fees and costs in the amount of $24,358.11.

IT IS SO ORDERED.

Dated: February 13, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

18